UNITED STATES DISTRICT COURT                     b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA          CRIMINAL ACTION 1:12-CR-00088-01

VERSUS                            JUDGE DRELL

MAURICE T. SMITH                  MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

## I.  Background

Before the Court is a motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 by pro se petitioner Maurice T. Smith ("Smith") on February 4, 2016 (Doc. 211).  Smith is contesting his 2013 conviction by a jury in the United States District Court for the Western District of Louisiana, on one count of conspiracy to possess with intent to distribute methamphetamine, and his sentence of life imprisonment.  Smith's conviction and sentence were affirmed on direct appeal (Doc. 190).[1]  Smith then filed this § 2255 motion (Docs. 211, 250, 266, 268, 273).  Smith is presently confined in USP-McCreary in Pine Knot, Kentucky.

Smith raises the following issues in his § 2255 motion (Docs. 211, 215, 217, 250, 255, 266, 268, 273):

(1)     Whether the District Court committed reversible error when it permitted the Government to question and solicit prejudicial and irrelevant "bad acts" evidence from its witnesses (Ronathan Quinn and Marvin Thompson) against Smith (Docs. 211, 217).

(2)     Whether application and enforcement of a sentence enhancement under 21 U.S.C. § 841 violated Smith's constitutional rights (Doc. 250, 255).

---

[1] Smith also had an administrative entry motion to reduce sentence (Docs. 195, 213), which was denied (Doc. 253).   Smith appealed that order (Doc. 265), but voluntarily dismissed his appeal (Doc. 274).

a.    The Controlled Substances Act of 1970 is facially unconstitutional and unconstitutional as applied to Smith's case (Doc. 250).

b.    The Court erred in finding Smith's two prior state felony drug convictions qualify as hypothetical federal felonies under the categorical approach (Docs. 255, 266, 268).

c.    The definition of "felony drug offense" in 21 U.S.C. § 802(44) is unconstitutionally vague and does not support an enhanced sentence (Doc. 250, 255).

d.    Whether the Court erred in relying on 21 U.S.C. § 802, instead of the recidivist clause of 21 U.S.C. § 841, to define the term "felony drug offense" for purposes of the enhancement provision of 21 U.S.C. § 802(44) (Docs. 255, 268).

e.    Whether the Court erred in using conspiracy as either the instant offense or a predicate offense for purposes of an enhanced sentence under § 841(b) (Doc. 255).

(3)    Whether Smith's two prior state convictions should have been treated as one prior conviction since they were consolidated for sentencing (Doc. 273).

(4)    Whether Smith had ineffective assistance of pretrial, trial, and appellate counsel (Doc. 211, 215, 217, 219, 273):

a.    for failing to move to suppress the inculpatory photographs of Smith exiting the train and of the luggage with drugs, as a sanction for losing the exculpatory photographs (Doc. 250);

b.    for not moving to sever his and Thomas's trials (Doc. 250);

c.    for failing to request Jencks Act material (Doc. 250);

d.    for failing to object to testimony by Quinn and Thompson about other crimes and bad acts (Docs. 211, 215, 217);

e.    for failing to object to the enhancement of Smith's sentence under 21 U.S.C. § 841 (Doc. 273);

f.    for failing to properly brief all of the issues raised on appeal, resulting in summary dismissal of those issues (Docs. 211, 215, 219);

g.    for failing to object to counting Smith's prior state convictions as more than one since they were consolidated for sentencing (Doc. 273); and

h.    the cumulative effect of counsel's errors denied Smith a fair trial (Doc. 250).

This motion is before the undersigned for initial review.  See 28 U.S.C. § 2255 and Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings For the

United States District Courts ("If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate.").

## II.    Law and Analysis

### A.    Rule 8(a) Resolution

This Court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the State court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application. See U.S. v. Green, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

### B.    The Law of §2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." See 28 U.S.C. § 2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962 (1992).

3

The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. See Cates, 952 F.2d at 151; see also U.S. v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.  See U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); see also U.S. v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995).  A collateral challenge may not do service for an appeal.  After conviction, exhaustion, and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted.  See U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076 (1992).

C.    Grounds for relief.

1.    Smith may not raise the issue of "other crimes" and "bad acts" evidence on collateral review.

First, Smith contends the District Court committed reversible error when it permitted the Government to question and solicit prejudicial and irrelevant "bad acts" evidence from its witnesses, Ronathan Quinn and Marvin Thompson, against Smith (Docs. 211, 217).  Smith raised this issue on direct appeal (Doc. 215-4), and the Fifth Circuit rejected it for failure to brief any arguments (Doc. 190).  The Fifth Circuit also noted that Smith failed to object to Thompson's testimony at trial (Doc. 190).

Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. See United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); U.S. v. Capua, 656 F.2d 1033, 1037 (5th Cir. 1981). Since Smith's attorney failed to brief this issue on appeal, effectively failing to raise it at all, Smith may not now raise it in his § 2255 proceeding. It is noted, however, that Smith also raised this issue through a claim of ineffective assistance of trial and appellate counsel, which will be considered below.

### 2. The definition of "felony drug offense" in 21 U.S.C. § 802(44) is not unconstitutionally vague.

Next Smith contends the application and enforcement of a sentence enhancement under 21 U.S.C. § 841 violated Smith's constitutional rights (Doc. 250, 255, 266, 268). Specifically, Smith argues: (a) the Controlled Substances Act of 1970 is facially unconstitutional and unconstitutional as applied to Smith's case (Doc. 250); (b) the Court erred in finding Smith's two prior state felony drug convictions qualify as hypothetical federal felonies under the categorical approach (Docs. 255, 266, 268); (c) the definition of "felony drug offense" in 21 U.S.C. § 802(44) is unconstitutionally vague and does not support an enhanced sentence (Doc. 250, 255); (d) the Court erred in relying on 21 U.S.C. § 802, instead of the recidivist clause of 21 U.S.C. § 841, to define the term "felony drug offense" for purposes of the enhancement provision of 21 U.S.C. § 802(44) (Docs. 255, 268); and (e) the Court erred in using conspiracy as either the instant offense or a predicate offense for purposes of an enhanced sentence under § 841(b) (Doc. 255).

a.    <u>The Controlled Substances Act is not unconstitutional.</u>

Smith contends the Controlled Substances Act of 1970 ("CSA") is facially unconstitutional and unconstitutional as applied to cocaine (Doc. 250).  Smith contends the CSA is unconstitutional because it exceeds Congress's power pursuant to the Commerce Clause.  Smith contends Congress did not have the authority to make every drug-related offense a federal crime (i.e., both interstate and intrastate offenses), and the lack of a jurisdictional element in §§ 841 and 846 amounts to an unconstitutional silent presumption of federal jurisdiction over all drug offenses (Doc. 250).

The Commerce Clause gives Congress the power to regulate three types of activity:  (1) the channels of interstate commerce;  (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce.  <u>See</u> <u>United States v. Wilson</u>, 238 Fed. Appx. 571, 572–73 (11th Cir. 2007) (citing <u>Gonzales v. Raich</u>, 545 U.S. 1, 16–17 (2005)).  The Supreme Court has found the CSA is a comprehensive framework for regulating the production, distribution, and possession of five classes of "controlled substances."  <u>See</u> <u>Raich</u>, 545 U.S. at 24.  This regulatory scheme is designed to foster the beneficial use of any medical purposes of those substances, to prevent their misuse, and to prohibit entirely the possession or use of substances listed in Schedule 1, except as part of a strictly controlled research project.  <u>See</u> <u>id.</u> at 27.  The Supreme

Court has upheld the CSA as a valid exercise of Congressional power to regulate interstate commerce. See id. at 22. Accordingly, the CSA is facially constitutional.

Smith also argues that methamphetamine[2] manufactured and distributed intrastate does not fall within the CSA because it is not interstate activity. Smith argues that the CSA is unconstitutional as applied to his case.

Smith was convicted of conspiring to possess methamphetamine with intent to distribute. The methamphetamine was purchased in California, with the intent to possess and distribute it in Louisiana. Therefore, Smith's conviction did not involve purely intrastate activity. However, even assuming Smith has standing to raise this argument, it is foreclosed by the Supreme Court's holding in Raich, that the CSA validly regulates some purely intrastate activity. See id. at 22. Supreme Court case law "firmly establishes Congress' power to regulate purely local activities [i.e. intrastate activities] that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." See id. at 17 (citing Perez v. United States, 402 U.S. 146, 151 (1971)). In Raich, the Court held that local production and distribution of marijuana (a Schedule I controlled substance), that is used domestically rather than sold on the open market, is still subject to federal regulation under the CSA. See Raich, 545 U.S. at 33. Likewise, local manufacture and distribution of methamphetamine (a Schedule III controlled substance) is an activity

---

[2] Smith actually refers to "cocaine" in his brief, but clearly meant "methamphetamine," since he was convicted of conspiring to possess with intent to distribute methamphetamine, not cocaine.

that properly falls within the scope of the CSA.  See U.S. v. Tisor, 96 F.3d 370, 375 (9th Cir. 1996), cert. den., 519 U.S. 1140 (1997) (intrastate distribution and sale of methamphetamine are commercial activities that have a substantial effect on interstate commerce); see also Thompson v. Holder, 480 Fed. Appx. 323, 325 (5th Cir. 2012), cert. den., 133 S. Ct. 586 (U.S. 2012) (the CSA permits prosecution for less than one gram of crack cocaine).

Therefore, the CSA is not facially unconstitutional or unconstitutional as applied.

**b.    Neither the categorical approach nor the modified categorical approach afford Smith any relief.**

Next, Smith contends the Court erred in failing to apply the categorical approach set forth in Moncrieffe v. Holder, 133 S.Ct. 1678, 1684 (U.S. 2013), to determine whether Smith's two prior state felony drug convictions qualified as felony drug offenses under the federal statutes, § 802(44) and § 841(b)(1)(A) (Docs. 255, 266). Smith contends that, for a prior state felony drug conviction to be used as a predicate offense under the recidivist clause of § 841(b)(1)(A), it must qualify as a hypothetical federal felony pursuant to the categorical approach.  Smith also argues that the modified categorical approach is applicable to his predicate offenses.

First, the hypothetical felony approach has been rejected by the Supreme Court.  See Carachuri-Rosendo v. Holder, 560 U.S. 563, 576-582 (2010); see also Descamps v. United States, 133 S.Ct. 2278, 2288 (U.S. 2013).

Second, the categorical approach has been applied in Immigration and Naturalization Act ("INA") cases (for "aggravated felony" under 8 U.S.C. § 1101(a)(43), which includes a "drug trafficking offense" under 18 U.S.C. § 924(c)), the Armed Career Criminal Act ("ACCA") (for "drug trafficking offense" in 18 U.S.C. § 924), and the United States Sentencing Guidelines ("USSG").

In <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990), the Supreme Court held that, for purposes of interpreting a § 924(e) sentence enhancement under the ACCA, the categorical approach is used to determine whether the elements of the state statute under which a defendant was previously convicted substantially correspond to the elements of a federal felony statute. Thus, if the prior conviction is for burglary, the definition of burglary is given uniformity by the definition for the federal offense of "violent felony" burglary, as intended in 18 U.S.C. §924(e)(2)(B)(ii), rather than relying on the varying definitions given by each individual state's criminal code. See <u>Taylor</u>, 495 U.S. at 599-602.

In <u>Moncrieffe</u>, 133 S. Ct. at 1684,[3] the Supreme Court stated that, when the Government alleges that a state conviction for "illicit trafficking in a controlled substance" qualifies as an "aggravated felony" (8 U.S.C. § 1101(a)(43)) for purposes of removal under the Immigration and Naturalization Act ("INA"), the Court generally employs the categorical approach to determine whether the state offense is

---

[3] Smith was convicted by a jury on May 31, 2013 (Doc. 107). The Supreme Court's decision in <u>Moncrieffe</u> was rendered and final on April 23, 2013.

comparable to an offense punishable as a felony under the CSA.[4] <u>Moncrieffe</u>, 133 S. Ct. at 1686. The Court noted that the categorical approach has long been used in our Nation's immigration law. <u>Moncrieffe</u>, 133 S. Ct. at 1685. The Fifth Circuit has noted that the definition of a "drug trafficking offense" under § 924 is narrower than the definition of a "felony drug offense" in § 802(44). <u>See</u> <u>U.S. v. Henao-Melo</u>, 591 F.3d 798, 804-05 (5th Cir. 2009), cert. den., 130 S. Ct. 2392 (2010) (not all "felony drug offenses" are "drug trafficking" offenses).

The categorical approach in <u>Moncrieffe</u> and <u>Taylor</u> has never been applied to the enhanced penalty provisions of § 841(b)(1)(A) and has never been used to interpret the phrase "felony drug offense" in 21 U.S.C. § 802(44). <u>See</u> <u>United States v. Wing</u>, 2016 WL 3676333, *2 (E.D. Ky. 2016) (<u>Moncrieffe</u> is inapplicable to the definition of "felony drug offense" for purposes of 21 U.S.C. § 841); <u>Smith v. United States</u>, 2016 WL 3194980 at *6 (M.D. Fla. 2016) (the term "felony drug offense," as used throughout § 841(b)(1), has a broader definition than the term "drug trafficking crime" as used in § 924(c)(2) and interpreted in <u>Moncrieffe</u>); <u>Whitt v. U.S</u>, 2015 WL

---

[4] A noncitizen who has been convicted of an "aggravated felony" (8 U.S.C. § 1101(a)(43)) is deportable (8 U.S.C. § 1227(a)(2)(A)(iii), and ineligible for several discretionary forms of relief (8 U.S.C. § 1158(b)(2)(A)(ii) and § 1229a(a)(3), (b)(1)(C)). Under the INA, an "aggravated felony" includes "illicit trafficking in a controlled substance," which includes a "drug trafficking crime" as defined in 18 U.S.C. § 924(c). <u>See</u> 8 U.S.C. 1101(a)(43).
Under the categorical approach, the Court determines whether "the state statute defining the crime of conviction" categorically fits within the "generic" federal definition of a corresponding aggravated felony under the INA. The term "generic" means the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense. <u>Moncrieffe</u>, 133 S.Ct. at 1684 (citing <u>Shepard v. United States</u>, 544 U.S. 13, 24 (2005)).

4545896 at *7 (D.S.C. 2015) (the categorical approach is not applicable to the CSA); Ferguson v. U.S., 2014 WL 808087 at *2 (S.D. Ga. 2014) (Moncrieffe is not applicable to a "controlled substance offense" under the sentencing guidelines); Williams v. United States, 2014 WL 6609014 at *5 (M.D. Fla. 2014) (Moncrieffe did not interpret "felony drug offense" under § 841(b) and does not apply to a controlled substance offense under the Sentencing Guidelines); Thomas v. U.S., 2013 WL 4855067 at *8 (M.D. Fla. 2013) (Moncrieffe did not interpret "felony drug offense" under § 841(b) and is not used to determine whether a statutory enhancement is appropriate under that statute).

In Mathis v. United States, 136 S. Ct. 2243 (U.S. 2016), the Supreme Court held the modified categorical approach is used to determine whether a prior conviction is a violent felony or serious drug offense as defined in the Armed Career Criminal Act, and prescribed the methodology that must be used. The Court in Mathis held that alterative means to commit an offense are not the same as alternative elements in the offense, and precluded consideration of any state record materials in the federal sentencing decision. In United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016), the Fifth Circuit applied Mathis to determine whether the Texas offense of delivery of a controlled substance is a controlled substance offense, and qualified as a predicate offense, under U.S.S.G. § 4B1.1 (career offender provision). See also United States v. Tanksley, 848 F.3d 347 (5th Cir. 2017), supplemented, 854 F. 3d 284 (5th Cir. 2017) (considering divisibility of predicate drug offense under the United States Sentencing Guidelines).

Most recently, in United States v. Zuniga, 2017 WL 2562904 (5th Cir. Jun 14, 2017), the Fifth Circuit recognized that Mathis and Hinkle did not change the law, but merely reaffirmed the principle articulated in Descamps v. United States, 133 S. Ct. at 2282, that the modified categorical approach may only be used to narrow an overly broad statute (for a predicate offense) that is divisible, i.e., a statute that sets out alternative elements of an offense, rather than alternative means of committing the offense. The Fifth Circuit noted that, although Zuniga did not raise the claim at trial, it would have been rejected under prior precedent had he done so. The Fifth Circuit recognized that Mathis clarified the law on divisibility in important respects and settled a circuit split. Accordingly, the Fifth Circuit held that Zuniga's claim was not procedurally barred. Zuniga's claim dealt with his categorization as a career offender under the Sentencing Guidelines, U.S.S.G. § 4B1.1.

Smith's sentence was enhanced to a mandatory life sentence pursuant to § 841(b)(1)(A) because he had two prior final convictions for felony drug offenses. Smith contends that, in his case, the District Court erred in failing to utilize the categorical approach set forth in Taylor and Moncrieffe that has been applied to the Armed Career Criminal Act, the Immigration and Naturalization Act, and the United States Sentencing Guidelines, or the modified categorical approach set forth in Mathis that has been applied to divisible offense statutes under the Armed Career Criminal Act and the United States Sentencing Guidelines.

Smith argues that pursuant to either the categorical approach or the modified categorical approach, his prior state conviction for possession of cocaine would not be

12

counted as a felony conviction under § 841(b)(1)(A).  If that were the case, Smith would only have one prior final conviction for a felony drug offense and he would not qualify for a mandatory life sentence.

Smith has not shown that the categorical approach or the modified categorical approach have been applied to the recidivist clause of § 841(b)(1)(A).  See Harden v. Young, 612 Fed. Appx. 256, 257 (5th Cir. 2015).  Moreover, Smith's argument is foreclosed by Fifth Circuit precedent.  The Fifth Circuit has held that a "felony drug offense" under § 841(b) includes any criminal conduct relating to narcotics that a state has proscribed as a felony (including simple possession), regardless of whether it is a felony under federal law.  See United States v. Sandle, 123 F.3d 809, 812 (5th Cir. 1997) (citing United States v. Hansley, 54 F.3d 709, 714-15 (11th Cir. 1995), cert. den., 516 U.S. 999 (1995); United States v. London, 568 F.3d 553, 564 (5th Cir. 2009), cert. den., 562 U.S. 1078 (2010); see also United States v. Cabrera, 2014 WL 1330040 (E.D. La. 2014); United States v. Morgan, 2012 WL 3138018, *5 (W.D. La. 2012); Lampton v. Menifee, 2007 WL 2710798, *4 (W.D. La. 2007), aff'd, 283 Fed. Appx. 218 (5th Cir. 2008).  Therefore, the District Court did not err by counting Smith's prior state conviction for possession of cocaine as a prior final conviction for a felony drug offense pursuant to § 841(b)(1)(A).

  c. **The definition of "felony drug offense" in § 802(44) is not unconstitutionally vague.**

Smith also contends the definition of "felony drug offense" in 21 U.S.C. § 802(44) is unconstitutionally vague and does not support his sentence enhancement

(Doc. 250). Smith contends that the broad definition of "felony drug offense" resulted in the government relying on his prior state court convictions for possession of cocaine, which are relatively minor drug offenses. In 2005, Smith was arrested for possession with intent to distribute schedule II drugs and carrying of weapons, was convicted of the lower offense of possession of cocaine, and was not charged with the weapons offense. In February 2007, Smith was convicted of possession with intent to distribute cocaine.

The imposition of a life sentence is mandated whenever a person with "two or more prior convictions for a felony drug offense" violates § 841(a) with a quantity of drugs in excess of the threshold set by § 841(b)(1)(A). United States v. Moore, 411 Fed. Appx. 922, 924–25 (8th Cir. 2011). Smith was charged and convicted of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing a detectable amount of methamphetamine (Doc. 12). Because Smith had two prior final felony drug offense convictions under Louisiana state law (possession of cocaine in 2005 and possession with intent to distribute cocaine in 2007), Smith's sentence was enhanced to a mandatory sentence of life imprisonment in accordance with 21 U.S.C. § 841(b)(1)(A) (Docs. 130, 134). Smith argues that the overly-broad definition of felony drug offense in § 802(44) permits sentence enhancement with state convictions for simple possession offenses.

"Felony drug offense" is defined in § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a

14

State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." The United States Supreme Court has held that the definition of "felony drug offense" set forth in § 802(44) is coherent, complete, exclusive, and unambiguous, and provides the exclusive definition for "felony drug offense" as used in § 841(b)(1)(A). See Burgess v. United States, 553 U.S. 124, 129, 135-36 (2008). Therefore, a state drug offense that is punishable by imprisonment for more than one year under state law qualifies as a "felony drug offense" pursuant to § 841(b)(1)(A). See Burgess, 553 U.S. at 129.

Smith contends the rule of lenity[5] should be applied to § 802(44), to construe the statute in his favor because it is ambiguous. However, the rule of lenity is inapplicable because the statutory language and structure of § 802(44) are clear and unambiguous. See U.S.v. Rains, 615 F.3d 589 (5th Cir. 2010), cert. den., 562 U.S. 1238 (2011) (citing U.S. v. Curry, 404 F.3d 316, 320 (5th Cir. 2005), cert. den., 544 U.S. 1067 (2005)).

Smith has not cited any controlling case law that states the definition of "felony drug offense" in § 802(44) is overly broad and unconstitutionally vague, and the Court has not found any. Although Smith argues that a felony conviction for simple

---

[5] The rule, or doctrine, of lenity states that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. Rewis v. United States, 401 U.S. 808, 812 (1971) (citing Bell v. United States, 349 U.S. 81, 83 (1955). "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity….It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment….If Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." See Bell, 349 U.S. at 83-84.

possession of a controlled substance should not count toward enhancement of his sentence because it is not as serious of an offense as a conviction for distribution of controlled substances, the law does not make that distinction. Either offense may be used as a predicate offense to enhance a sentence under 21 U.S.C. § 841(b)(1)(A).

Moreover, it is noted that, although the prosecutor filed two separate Notices regarding his intent to enhance Smith's sentence with his prior felony drug convictions (Docs. 68, 82), pursuant to § 851, Smith did not deny his prior felony drug convictions and, at his sentencing hearing, conceded he had those convictions (Doc. 176, p. 16/20).

Smith has not carried his burden of proving the definition of "felony drug offense" in § 802(44) is unconstitutionally vague.

### d.  The District Court did not err in relying on § 802(44) to define "felony drug offense" and enhance Smith's sentence.

Smith contends the Court erred in relying on 21 U.S.C. § 802(44) to define the term "felony drug offense" for purposes of the sentence enhancement provision of 21 U.S.C. § 841, thereby violating his right to due process (Docs. 255, 268).

In Burgess, 553 U.S. at 129, the Supreme Court held that a "felony drug offense," as that term is used in § 841(b)(1)(A), is defined *exclusively* by § 802(44) as an offense that is punishable by imprisonment for more than one year, whether or not the offense arises under state or federal law. Therefore, the District Court did not err in relying on § 802(44) to define "felony drug offense" in Smith's case.

Smith contends the Court must also compare the state statute of conviction to the federal offense statute to see if the crimes match, as required by the categorical approach set forth in <u>Moncrieffe</u>.   However, as discussed above, <u>Moncrieffe</u>'s categorical approach is not applicable to determine what qualifies as a predicate felony drug offense under § 841(b).

Smith also contends that the Court must apply the "modified categorical approach" set forth in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (U.S. 2013), to a predicate "felony drug offense" used for a sentence enhancement pursuant to 21 U.S.C. 841(b).[6]  Again, as set forth above, the modified categorical approach has not been applied to the recidivist clause in 18 U.S.C. § 841(b).  <u>See</u> <u>Harden</u>, 612 Fed. Appx. at 257.

Therefore, Smith's right to due process was not violated when the District Court relied on § 802(44) to define "felony drug offense."

> ### e.  <u>Conspiracy under § 846 can be used as a predicate or instant offense for purposes of a recidivist enhancement under § 841.</u>

Smith contends that a conviction for conspiracy under 21 U.S.C. § 846 cannot be used to support a recidivist enhancement under 21 U.S.C. § 841, as either a predicate offense or an instant offense (Doc. 255).   Smith's instant conviction is for a conspiracy offense, but his two prior state convictions were not for conspiracy.

---

[6] In <u>Descamps</u>, 133 S. Ct. at 2292, the Supreme Court held the modified categorical approach is applicable only to determine which alternative element in a divisible statue formed the basis of the defendant's conviction.

First, Smith contends that § 841(1) requires an overt act, while a conspiracy offense pursuant to § 846 does not require an overt act. Smith is contending he was convicted of an offense pursuant to § 846 rather than an offense pursuant to § 841(a), and that a conviction under § 846 does not support a sentence enhancement under the recidivist clause of § 841(b)(1)(A). However, the conspiracy statute provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." See 21 U.S.C. § 846. Therefore, Smith was properly sentenced pursuant to § 841, regardless of whether there was an overt act.

Next, Smith argues the district court should have employed the categorical approach to determine whether a conspiracy offense pursuant to § 846 fails as a crime defined under § 841, citing Moncrieffe and Mathis. However, Moncrieffe and Mathis are not applicable to a predicate offense under § 841(b), as discussed above. Moreover, Smith's predicate state offenses were not for conspiracy. Instead, his instant offense was for conspiracy.

Smith also argues that an enhanced sentence cannot be imposed on a conspiracy conviction. Under section 841(b)(1), the term "felony drug offense" includes crimes (such as attempt crimes) that do not involve outright possession of narcotic drugs. In Burgess, 553 U.S. at 129, the court found that a conviction, in the instant offense, for conspiracy to possess with intent to distribute cocaine base supported a recidivist enhancement.

Therefore, the Court did not err by imposing an enhanced sentence for Smith's conviction for conspiracy to possess cocaine with intent to distribute.

### 3. Smith's two prior state felony drug convictions count as two prior final felony convictions under the recidivist clause.

Smith argues that the two prior state felony drug convictions that were used to enhance his sentence should only have been counted as one conviction because they were consolidated for purposes of sentencing (Doc. 273).

Smith's federal sentence was enhanced with two prior state felony drug convictions: (1) a 2005 charge in Concordia Parish, Louisiana for possession of cocaine, of which he was convicted and sentenced on October 15, 2008; and (2) a 2007 charge in Concordia Parish, Louisiana for possession with intent to distribute cocaine, of which he was convicted and sentenced on October 15, 2008 (Doc. 137, p. 12). Smith was sentenced on each of those state convictions to five years of imprisonment, suspended, and five years of probation, and the sentences were imposed to run concurrently with each other and any other sentence.

Although the imposition of concurrent sentences may be evidence that two convictions stemmed from a single act of criminality, that is not always the case. See U.S. v. Liquori, 5 F.3d 435, 438 (9th Cir. 1993), cert. den., 510 U.S. 1063 (1994). Under § 4A1.2(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."), two prior sentences imposed in "related cases" are treated as one sentence for purposes of calculating criminal history points. U.S.S.G. § 4A1.2(a)(2). The commentary to the guidelines defines "related cases":

19

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.
>
> U.S.S.G. § 4A1.2, comment. (n. 3).

See Liquori, 5 F.3d at 438. Two prior felony drug convictions should be treated as one if and only if the conduct underlying both convictions was part of a single criminal episode. Any other construction would be at odds with both the plain language of the statute-two means two-as well as with Congress' recognized goal in enacting mandatory minimum sentences for recidivist drug offender. See United States v. Powell, 404 F.3d 678, 682 (2d Cir. 2005) (citing U.S. v. Hughes, 924 F.2d 1354, 1361 (6th Cir. 1991)); see also U.S. v. Upshaw, 205 F.3d 1327, *2 (2d Cir. 2000), cert. den., 529 U.S. 1137 (2000); U.S. v. Ford, 88 F.3d 1350, 1366 (4th Cir. 1996), cert. den., 519 U.S. 999 (1996).

Smith's two offenses were separate criminal episodes. Smith was arrested in 2005 and charged with possession of stolen things, possession with intent to distribute Schedule II drugs, and carrying of weapons, and was convicted only of possession of cocaine (Doc. 137, p. 12). In 2007, Smith's home was searched, drugs and drug paraphernalia were found, he was charged with possession of drugs and drug paraphernalia, and he was convicted of possession with intent to distribute cocaine (Doc. 137, pp. 12-13). Smith was sentenced on both offenses on the same date in 2008.

Smith's 2005 and 2007 offenses/arrests were not for the same criminal conduct, and the 2005 arrest was an "intervening arrest" between the separately charged criminal activities. Therefore, although Smith was sentenced on both offenses at the same time, they count as two separate convictions for purposes of sentence enhancement under § 841(b) because they arose from separate criminal conduct and there was an "intervening arrest."

### 4.    Smith did not have ineffective assistance of counsel.

Finally, Smith contends he has ineffective assistance of pretrial, trial, and appellate counsel (Doc. 211, 215, 217, 219, 273): (a) for failing to move to suppress the inculpatory photographs of Smith exiting the train and of the luggage with drugs, as a sanction for losing the exculpatory photographs (Doc. 250); (b) for not moving to sever his trial from Thomas's (Doc. 250); (c) for failing to request Jencks Act (18 U.S.C. § 3500) material (Doc. 250); (d) for failing to object to testimony by Marvin Thompson about other crimes and bad acts (Docs. 211, 215, 217); (e) for failing to object to the enhancement of Smith's sentence under 21 U.S.C. § 841 (Doc. 273); (f) for failing to properly brief all of the issues raised on appeal, resulting in summary dismissal of those issues (Docs. 211, 215, 219); (g) for failing to object to counting Smith's prior state convictions as more than one since they were consolidated for sentencing (Doc. 273); and (h) the cumulative effect of counsel's errors denied Smith a fair trial (Doc. 250).

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-

pronged test set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense"). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>See</u> <u>Anderson v. Collins</u>, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein; <u>see also</u> <u>U.S. v. Segler</u>, 37 F.3d 1131, 1136 (5th Cir. 1994).

The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right. <u>See</u> <u>United States v. Williamson</u>, 183 F.3d 458, 462 (5th Cir. 1999) (citing <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985); <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998), cert. den., 525 U.S. 1174 (1999)). Counsel's appellate performance is judged under the same <u>Strickland</u> standard applicable to trial performance. When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, the prejudice prong first requires a showing that the Fifth Circuit would have afforded relief on

appeal.  See United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)).

### a-b.   Smith's attorney did not err by failing to move to suppress the Government's photographs and by not moving to sever Thomas' and Smith's trials.

Smith contends his trial attorney erred by failing to move to suppress the inculpatory photographs of Smith exiting the train and of the luggage with drugs, as a sanction for losing potentially exculpatory photographs (Doc. 250).  Smith further contends that his attorney should have moved to sever his trial from Thomas's, so that Thomas could have testified for Smith (Doc. 250).

Smith's version of events was that he, Thomas, and others took a family trip together to California (Doc. 251).  However, Smith decided to cut the trip short and flew home (Doc. 251).  Thomas and Thompson took a train home and were caught disembarking from the train with methamphetamine in their luggage (Doc. 251).  Thomas had called Smith from the train and asked him for a ride home (Doc. 251).  Thomas denied the luggage he was carrying was his, and both Thomas and Smith denied any knowledge of the drugs found in the luggage (Docs. 251, 252).  Thompson pleaded guilty and testified against Thomas and Smith pursuant to a plea agreement (Doc. 155, p. 243/271).

At Thomas's and Smith's trial, the Government introduced six photographs, taken by Agent Walsh, of the individuals (including Smith) who took the trip to California (Doc. 154, pp. 35-36/94).  Smith argues and contends in his affidavit that, during the discovery phase, the Government provided photos of Thompson exiting the

train with luggage, and of Thompson's open luggage with drugs in it (Docs. 250, 251). Smith alleges the Government claimed to have lost its exculpatory photos of Thomas exiting the train (Doc. 251). Smith further alleges the photos would have shown Thomas exiting the train carrying luggage that was later found to contain drugs (Doc. 251). Thomas contends his attorney should have moved to suppress all of the photos, as punishment for the Government having "lost" the exculpatory photos.

Thomas contended in an affidavit provided after trial (Doc. 252) that he exited the train without luggage or drugs, and was unaware that Thompson was carrying drugs in his luggage (Doc. 252). Smith maintains that the lost photographs would refute that statement, and prove Thomas was carrying luggage when he disembarked.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the evidence been disclosed to the defendant the result of the proceeding would have been different. Wilson v. Whitley,

28 F.3d at 434, citing <u>Bagley</u>, 473 U.S. at 682.   A reasonable probability is a probability sufficient to undermine confidence in the outcome.   <u>See</u> <u>Spence v. Johnson</u>, 80 F.3d 989, 994 (5th Cir. 1996), cert. den., 519 U.S. 1012 (1996), citing <u>Bagley</u>, 413 U.S. at 682.   The materiality of <u>Brady</u> material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state.   <u>See</u> <u>Wilson v. Whitley</u>, 28 F.3d 433, 439 (5th Cir. 1994), cert. den., 513 U.S. 1091 (1995).

There does not appear to be anything in the trial record about lost photographs. However, even accepting Smith's statements that there were other photographs that the Government misplaced, Smith has not demonstrated prejudice to his defense. <u>See</u> <u>U.S. v. Garcia-Alczar</u>, 195 Fed. Appx. 549, *1 (9th Cir. 2006), cert. den., 549 U.S. 1272 (2007) (government lost potentially exculpatory evidence).   Presumably, the alleged missing photographs, showing Thomas disembarked the train with luggage, could have been used to impeach Thomas's credibility.   However, Agent Walsh testified that both Thompson and Thomas disembarked the train carrying luggage (Doc. 154, p. 42-43/94).   Officer Fulmer, Lt. Jackson, and Lt. Groh also testified that both Thompson left the train carrying one suitcase, and Thomas was carrying two pieces of luggage (Doc. 155, pp. 75-76, 79, 87, 98-99/271).   Agent Walsh also testified that drugs were taken from the luggage carried by both Thompson and Thomas (Doc. 154, p. 54/94).   Trooper Moore testified that he opened the luggage and removed Xanax pills and methamphetamine from the smaller toiletries bag that Thomas had carried, and he removed methamphetamine from the suitcase Thompson carried (Doc. 155, pp. 116-

18, 131-32/271). Trooper Moore also testified that Thomas stated the luggage he was carrying did not belong to him (Doc. 155, p. 116/271).

Since there was abundant testimony that Thomas carried luggage with drugs in it when he disembarked the train, the missing photographs would have been redundant. Smith cannot show prejudice from the fact that the photographs were missing. Therefore, Smith has not shown that his attorney erred by failing to object on the basis of the missing photographs.

Smith also contends his attorney erred in failing to sever his trial from Thomas's, so that Thomas could testify in Smith's defense. Smith contends, and Thomas stated in his post-trial affidavit, that Thomas called Smith for a ride home from the train station, but Thompson did not know who Thomas had called for a ride (Doc. 252). Smith contends he did not know about the drugs Thomas and Thompson had in their luggage.

Thomas contends in his affidavit that he did not testify in his own defense at trial, and did not offer testimony in Smith's defense, because he did not want the Government to ask him about his criminal history (Doc. 252). Smith and Thomas both stated in post-trial affidavits that Thomas would have been willing to testify that Smith did not know anything about the drugs that Thompson was carrying, if Smith's trial had been severed from Thomas's (Docs. 251, 252). Smith also stated in his affidavit that he told his attorney that Thomas would testify on Smith's behalf if Smith's trial was severed from Thomas's, but Smith's attorney refused to file a motion to sever (Doc. 251).

26

Smith has not shown that, had his trial been severed from Thomas's, thereby affording Thomas an opportunity to testify that he called Smith to pick him up from the train station and that Smith did not know there were drugs in the luggage, the result of his trial would have been different.  The Government could still have impeached Thomas's credibility at Smith's trial by bringing up his criminal history. The greater weight of the evidence, including Thompson's testimony, would still have been against Smith.  <u>See</u> F.R.E. Rule 609.  Therefore, Smith has not carried his burden of proving he had ineffective assistance of trial counsel.

c.    <u>Smith did not have ineffective assistance of counsel with regard to Jencks Act material.</u>

Smith contends his attorney erred in failing to request Jencks Act (18 U.S.C. § 3500) material (Doc. 250).   Smith states in his affidavit that his attorney told him she forgot to ask for Jencks Act material (Doc. 251).

The Jencks Act, 18 U.S.C § 3500, provides that, when a witness testifies for the United States, the Government may be required to produce any statement of the witness which relates to his testimony, § 3500(b).

Smith contends his attorney failed to request Jencks Act material for co-defendant Thompson, who pleaded guilty and testified for the Government.  Smith speculates that, if the Government had prior statements made by Thompson, he might have been able to use them to impeach Thompson's credibility (Doc. 250).

This Court's Criminal Pretrial Discovery Order (Doc. 28) was issued at Smith's arraignment.  That Discovery Order states that counsel for the Government shall

state whether Jencks Act material will be provided prior to trial and, if so, when (Doc. 28).  The Order further states that Jencks Act material should be provided no later than the last regular workday before the trial (Doc. 30).  Therefore, the Criminal Pretrial Discovery Order issued by the Court included a provision for Jencks Act material.  Smith has not shown there was any Jencks Act material available that his attorney did not receive.

### d.    Smith's attorney objected to the admission of evidence of other crimes.

Smith contends the District Court committed reversible error when it permitted the Government to question and solicit prejudicial and irrelevant "bad acts" testimony from Ronathan Quinn and Marvin Thompson, against Smith (Docs. 211, 215, 217).  Smith raised this issue on direct appeal (Doc. 215-4), and the Fifth Circuit rejected it for failure to brief any arguments (Doc. 190).  The Fifth Circuit also noted that Smith failed to object to Thompson's testimony at trial (Doc. 190).

The Government filed a notice of intent to introduce evidence pursuant to F.R.E. Rule 404(b) (evidence of other crimes or bad acts) (Doc. 69).  Smith's attorney filed a motion in limine (Doc. 90), attempting to have the evidence of Smith's prior bad acts that did not involve methamphetamine excluded from trial.  A hearing was held on that motion on May 28, 2013 (Doc. 99), a transcript of which was filed for purposes of appeal (Doc. 159).  The District Judge ruled generally that testimony as to Smith's prior crimes would be admissible only if they were crimes involving methamphetamine, but wanted to wait until trial to make more specific rulings (Doc.

159, pp. 7-8/15).  At the trial, before Quinn testified, the District Judge noted there had been an off-the-record conversation with counsel in which he set forth parameters for Quinn's testimony (Doc. 156, p. 2/143).  Therefore, Smith's counsel objected to the introduction of evidence of prior crimes before trial.  At trial, Smith's counsel focused her efforts on impeaching those witnesses.

Quinn testified as to: (1) a conversation he had with Smith, in which Smith told him he sold methamphetamine (Doc. 156, p. 11/143); and (2) another conversation they had in jail, when Smith told Quinn he had started selling methamphetamine because he could make more money from it than he could from selling powder cocaine (Doc. 156, p. 12/143).  Smith's attorney attempted to impeach Quinn with questions about his prior convictions and plea agreement (in another case) in exchange for his testimony in this case (Doc. 356, pp. 14-23/143).

Thompson testified as to matters within his personal knowledge–how he knew Smith, and the arrangement they had for selling methamphetamine (Doc. 155, pp. 182-194/271).  Thompson testified that Smith sold a variety of drugs and was the "biggest drug dealer in Ferriday" (Doc. 155, p. 264/271).  Thompson also testified as to how he became involved in the scheme with Smith and Thomas to purchase drugs in California for resale in Louisiana, and how they carried it out (Doc. 155, pp. 195-226/271).

Thompson's testimony was admissible pursuant to F.R.E. Rules 602 (personal knowledge) and 701 (opinion testimony).  Smith's attorney impeached Thompson by

29

cross-examining him as to his motive for testifying against Smith and Thomas (his plea agreement) and his prior criminal convictions (Doc. 155, pp. 242-245/271).

Smith also argues that Quinn's and Thompson's testimony did not meet the test for admissibility of other crimes set forth in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978), cert. den., 440 U.S. 920 (1979).[7]  However, Smith has raised the issue within the context of a claim of ineffective assistance of counsel.  Smith's attorney objected to the proposed evidence, the Court allowed the evidence to be introduced within certain parameters, and Smith's attorney then attempted to impeach the Government's witnesses.  Smith did not have ineffective assistance of counsel.  Moreover, as discussed below, there was no improperly admitted evidence of other crimes or bad acts.

### e.    Smith did not have ineffective assistance of counsel at sentencing.

Smith contends his trial attorney erred by failing to object to the enhancement of Smith's sentence under 21 U.S.C. § 841 (Doc. 273), for the reasons given in Smith's second assignment of error (Doc. 271).  For the reasons discussed above, Smith has not shown there were any errors in his sentencing or that his sentence should not have been enhanced.  The failure to raise a meritless objection is not ineffective assistance.  See Soler v. Ward, 281 F.3d 1278 (5th Cir. 2001) (citing Clark v. Collins,

---

[7] As set forth above, Smith's claim that the District Court erred in admitting the evidence of other crimes was abandoned on appeal and may not be raised on collateral review.

19 F.3d 959, 966 (5th Cir. 1994), cert. den. 513 U.S. 966 (1994)).  Therefore, Smith has not shown that he had ineffective assistance of counsel at his sentencing.

### f.  Smith did not have ineffective assistance of appellate counsel.

Smith contends he had ineffective assistance of counsel on appeal  due to his appellate counsel's failure to properly brief all of the issues raised on appeal, resulting in summary dismissal of those issues (Docs. 211, 215, 219).

The only issue raised by Smith on appeal was whether the District Court reversibly erred by allowing the Government to elicit irrelevant and prejudicial extrinsic bad acts and character evidence from its witnesses.  The Fifth Circuit dismissed the claim, stating that Smith had failed to brief any arguments challenging Quinn's and Thompson's testimony, did not object at trial to Thompson's testimony,[8] did not provide record citations of Thompson's testimony on direct examination by the Government, did not cite legal authority for all arguments, and cited Beechum without analysis (Doc. 190).  The Fifth Circuit noted Smith's attorney characterized all of Thompson's testimony as "extrinsic" evidence, even though some or all of it should be considered "intrinsic" evidence due to Thompson's participation in the conspiracy.

F.R.E. 404(b) is designed to guard against the inherent danger that the admission of "other acts" evidence might lead a jury to convict a defendant not of the

---

[8] As discussed above, that issue was fully considered prior to trial and on the second day of trial (in an unrecorded discussion).

charged offense, but instead of an extrinsic offense.  See United States v. Sumlin, 489 F.3d 683, 689 (5th Cir. 2007) (citing United States v. Ridlehuber, 11 F.3d 516, 521 (5th Cir. 1993).  This danger is particularly great where the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.  See id.  Rule 404(b) only applies to limit the admissibility of evidence of extrinsic acts.  See Sumlin, 489 F.3d at 689 (5th Cir. 2007) (citing United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996).

Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged.  Sumlin, 489 F.3d at 689.  Intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place," United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996), "so that the jury may evaluate all the circumstances under which the defendant acted," Sumlin, 489 F.3d at 689 (5th Cir. 2007) (citing United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992)).  See United States v. Maceo, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b), and is therefore not barred by the rule.").

Quinn testified as to prior drug deals between himself and Smith for methamphetamine.  That evidence was admitted to show Smith's knowledge of the methamphetamine business, and intent to acquire and sell methamphetamine in the

instant offense, in accordance with F.R.E. Rule 404(b).  Quinn also testified that he sold crack cocaine, but Smith told him he sold methamphetamine because it was more profitable than crack (Doc. 156, pp. 11-12/143).  Although Quinn mentioned crack cocaine and was warned against doing so again, Quinn was only testifying about himself, and did not testify that Smith bought or sold cocaine.  Therefore, Quinn's testimony about cocaine did not prejudice Smith.

Thompson's testimony concerning Smith's role and activities in the conspiracy was intrinsic evidence, not extrinsic evidence subject to Rule 404(b).  Thompson's statement that Smith was the biggest drug dealer in Ferriday was his opinion based on personal knowledge.  See F.R.E. Rule 701.  Although there was no specific evidence as to the volume of business conducted by Smith, the comment made no difference to the verdict in this case, particularly since both Thompson and Quinn had testified as to their previous drug deals with Smith.

Smith has not shown that, had his appellate counsel fully briefed the issues on appeal, the result of his appeal would have been different.  Therefore, Smith has not shown he had ineffective assistance of appellate counsel.

g.    **Smith's prior state felony drug offense convictions counted as two separate convictions.**

Smith contends his trial attorney erred by failing to object to counting Smith's prior state convictions as two separate convictions since they were consolidated for sentencing.  As discussed above, Smith's prior convictions were properly counted as

two separate convictions.  The failure to raise a meritless objection is not ineffective assistance.  See Soler, 281 F.3d at *1.

### h.    Smith was not denied a fair trial.

The cumulative effect of counsel's errors denied Smith a fair trial (Doc. 250). Since there were not errors to cumulate, Smith was not denied a fair trial.  See Soler, 281 F.3d at *2 (citing Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996), cert. den., 519 U.S. 1094 (1997) (meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised)).

III.    Conclusion

Based on the foregoing, IT IS RECOMMENDED that Smith's § 2255 motion be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within**

34

fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ‾11th‾ day of July, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge

35